UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**SOUTHERN FAMILY INSURANCE COMPANY,**

    Plaintiff,

v.                                   Case No.  8:05-cv-2158-T-30MAP

**UNITED STATES OF AMERICA,**

    Defendant.
_____

## ORDER

THIS CAUSE comes before the Court upon the following motions and responses to the same: (I) Defendant United States of America's Motion to Dismiss or Alternatively for Summary Judgment (Dkt. 65) and Memorandum in Support (Dkt. 66), (ii) Poe Financial Group, Inc.'s Motion to Dismiss Southern Family's Amended Complaint and Incorporated Memorandum of Law (Dkt. 67), (iii) Motion of Southern Family for Continuance of United States of America's Motion for Summary Judgment and Memorandum of Law (Dkt. 80), (iv) Southern Family Insurance Company's Motion for Leave to Conduct Discovery During the Pendency of a Motion to Dismiss for Lack of Jurisdiction (Dkt. 97), and (v) Southern Family's Motion for Leave to File a Reply (Dkt. 100).  The Court, having considered the motions, responses, and supporting memoranda, and being otherwise fully advised in the premises, determines the motions to dismiss should be granted and the remaining motions should be denied as moot.

**Background**

I. **The RPCJUA and Southern Family**

Following the aftermath of Hurricane Andrew in 1992, a number of property and casualty insurers ceased writing and/or renewing windstorm insurance policies in Florida. As a result, the State of Florida (the "State") and its residents faced an insurance crisis. In response to the crisis, the State passed legislation creating the Residential Property and Casualty Joint Underwriting Association (the "RPCJUA") as a windstorm insurer of last resort. Following its creation, the RPCJUA[1] issued over one million residential insurance policies. In order to encourage private insurers to re-enter the marketplace, the State passed further legislation, codified at Section 627.3511, Florida Statutes, to encourage the transfer of property insurance policies from RPCJUA to private insurers.

Pursuant to the legislation, the State provided what it referred to as "take-out bonuses" to private insurers for each risk they removed from the RPCJUA. See Fla. Stat. § 627.3511. The bonuses were not, however, immediately transferred to the private insurers. Instead, the payments were paid into an escrow account (the "Escrow Account") pursuant to the terms of the statute and an escrow agreement among the State, RPCJUA, and a third party trustee. Under this arrangement, the trustee was only allowed to release the bonuses to the private insurers after certain terms were met. Generally, insurers were required to provide coverage under a policy for three years before the corresponding funds were released. Upon expiration

---

[1] The RPCJUA was the predecessor to Citizen's Property Insurance Corporation ("CPIC").

of that three year period, the RPCJUA would conduct an audit to determine whether the insurer had provided coverage under the applicable policies and otherwise complied with the statute. Following the audit of a private insurer, the bonuses, together with accrued interest, were released to the insurer. If the insurer was not entitled to receive any portion of the funds due to a failure to comply with the statute, that portion would be recovered by the RPCJUA.

Southern Family Insurance Company ("Southern Family") was formed in 1996 to write residential insurance policies and participate in the RPCJUA policy takeout program. Southern Family ultimately took over thousands of policies from the RPCJUA. As a result, the RPCJUA deposited takeout bonuses into the Escrow Account. The takeout bonuses relevant to the instant action were deposited by the RPCJUA into the Escrow Account during the calendar years 1996-1999.

In 1999, the RPCJUA approved the first release of funds to Southern Family. These funds related to the policies "taken out" by Southern family during the 1996 taxable year. Southern Family accounted for these takeout bonuses as a direct contribution to capital and surplus and did not report the same as taxable premium income on its 1999 federal income tax return.

For the tax years 1996-1998, Southern Family did not file a stand alone tax return. Instead, Poe Financial Group, Inc. ("Poe Financial"), the common parent of a group of corporations that included Southern Family, filed a consolidated return. For the 1999 tax

year, Southern Family was not a member of the consolidated group and filed a separate stand alone return.

Following examination of the consolidated tax returns for 1996-1998, together with Southern Family's 1999 return, the Internal Revenue Service ("IRS") issued notices of deficiency to Poe Financial for 1996-1998 and Southern Family for 1999. The IRS determined that the Poe Financial and Southern Family had improperly treated the takeout bonus payments as capital contributions and therefore had erroneously excluded the payments from gross income. Southern Family paid the amount of the deficiency for the relevant tax years (1996-1999). Seeking return of the taxes paid to satisfy the deficiency, Poe Financial filed an administrative refund claim for tax years 1996-1998, and Southern Family filed a separate administrative refund claim for 1999. Ultimately the IRS denied both administrative refund claims.

Both Poe Financial and Southern Family have filed separate actions against the United States for refund of the same taxes paid on the bonus payments, plus accrued interest, for the years 1996-1998. Southern Family has also filed a separate refund action against the United States in connection with taxes paid on the bonus payments for 1999. These separate actions were consolidated into the instant action on November 7, 2007.[2]

---

[2]Prior to filing of the now consolidated lawsuits, Poe Financial filed for bankruptcy protection under Chapter 11 of the Bankruptcy Code in *In re Poe Financial Group, Inc.*, Case No. 8:06-bk-04288-CPM, and Southern Family was placed into receivership by the State of Florida, Department of Financial Services. *See State of Florida, ex rel., The Department of Financial Services of the State of Florida v. Southern Family Insurance Company*, Case No. 2006-CA-1060 (Fla. 2d Jud. Cir.).

Poe Financial and the United States now argue Southern Family's claims for refund in connection with the tax years 1996-1998 should be dismissed for lack of jurisdiction because Poe Financial, not Southern Family, filed the administrative refund claims for those years. Southern Family claims it is entitled to pursue the refund because it paid the tax directly to the IRS. Further, Southern Family argues it dealt directly with the IRS with respect to payment of the taxes and pursuit of the refund.

## Motion to Dismiss Standard Under 12(b)(1)

Attacks on subject matter jurisdiction under Fed.R.Civ.P. 12(b)(1) come in two forms. Lawrence v. Dunbar, 919 F.2d 1525, 1529 (11th Cir. 1990). "Facial attacks" on the complaint "require the court to merely look and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in the complaint are taken as true for the purposes of the motion." Id. at 1529. "Factual attacks," on the other hand, challenge "the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered." Id.

These two forms of attack differ substantially. "On a facial attack, a plaintiff is afforded safeguards similar to those provided in opposing a Rule 12(b)(6) motion - the court must consider the allegations of the complaint to be true." Id. at 1529. "But when the attack is factual, the trial court may proceed as it never could under 12(b)(6) or Fed.R.Civ.P. 56. At issue in a factual 12(b)(1) motion is the trial court's jurisdiction - its very power to hear the case - there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." Id. "In short, no presumptive

truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." Id.  The "burden for establishing federal subject matter jurisdiction rests with the party bringing the claim." Sweet Pea Marine, Ltd. v. APJ Marine, Inc., 411 F.3d 1242, 1247 (11th Cir. 2005)

### Discussion

In its Amended Complaint, Plaintiff alleges the Court has jurisdiction over this action under 28 U.S.C. § 1346(a)(1).  Pursuant to 28 U.S.C. § 1346(a)(1), a district court has jurisdiction over any "civil action against the United States for recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected, or any penalty claimed to have been collected . . . or in any manner wrongfully collected under the internal-revenue laws."  This provision "must be read in conformity with other statutory provisions which qualify a taxpayer's right to bring a refund suit upon compliance with certain conditions." U.S. v. Dalm, 494 U.S. 596, 601, 110 S.Ct. 1361, 1364 (1990). Included among such conditions is the requirement that a party must file claim or refund with the Secretary of the Treasury (the "Secretary") before filing an action in any court.  Id.; See 26 U.S.C. § 7422(a).  A court lacks subject matter jurisdiction over a refund suit where a plaintiff has failed to timely file a claim for refund with the Secretary.  Id. at 602.

Section 1501 of the Internal Revenue Code ("IRC") permits an affiliated group of corporations to file a consolidated income tax return. 26 U.S.C. § 1501. Section 1502 of the IRC delegates authority to the Secretary to prescribe regulations concerning the filing,

assessment, and collection of consolidated returns. In exercising such authority, the Secretary has issued Treasury Regulation 1.1502-77A, which designates the parent corporation filing a consolidated return as the "sole agent for each subsidiary in the group, duly authorized to act in its own name in all matters relating to the tax liability for the consolidated return year." 26 C.F.R. § 1.1502-77A(a). Moreover, subject to specific exceptions that do not apply here, "no subsidiary shall have authority to act for or represent itself in any such matter." Id. All correspondence with the Secretary is to be carried on with the common parent and the common parent is required to make any claims for refund. Id.

The last sentence of the applicable section of the Regulation provides as follows: "[n]otwithstanding the provisions of this paragraph, the Commissioner may, upon notifying the common parent, deal directly with any member of the group in respect of its liability, in which event such member shall have full authority to act for itself." Id. Plaintiff argues that Southern Family has dealt directly with the IRS with respect to its refund claim for the years 1996-1998, including making direct payment to the IRS of all funds that are the subject of this action, and that as such it is entitled to bring an independent refund action.

Plaintiff also argues that it is entitled to pursue a refund claim under the general rule set forth in Internal Revenue Code § 6402(a), which provides as follows:

> In the case of any overpayment, the Secretary, within the applicable period of limitations, may credit the amount of such overpayment, including any interest allowed thereon, against any liability in respect of an internal revenue tax on the part of the person who made the overpayment and shall, subject to subsections ©), (d), (e), and (f), refund any balance to such person.

Southern Family argues an interpretation of Treasury Regulation 1.1502-77A(a) that would divest this Court of jurisdiction to consider its refund claim for 1996-1998 would be impermissible, unreasonable and inequitable.  Moreover, Southern Family claims that by making this argument, the IRS is attempting to legislate an exception to the general refund rule of § 6402(a).

The Court rejects both of Southern Family's positions.  In accordance with Treasury Regulation 1.1502-77A(a), Poe Financial filed a consolidated return for the years 1996-1998 as the "sole agent" of a group of affiliated companies that included Southern Family.  After Southern Family paid the disputed tax, Poe Financial, not Southern Family, filed the claim for refund with the IRS.  While Southern Family argues it filed a claim for refund with the IRS for these tax years, a review of the record reveals the contrary.  On the front of the Form 1120X filed with the IRS as a part of the refund claim, "Poe Financial Group, Inc." is identified as the taxpayer.  Moreover "Poe Financial Group, Inc." is expressly defined as the "Taxpayer" in an attachment to the Form 1120X.

Southern Family acknowledges that Poe Financial is named on the front of the form, but argues that the body of the claim refers to the "Taxpayer" as an insurance company that entered into agreements with an agency of the State of Florida.  Because Southern Family rather than Poe Financial was the insurance company that entered into those agreements, Southern Family argues all substantive references to the "Taxpayer" in the body of the claims for refund should be read to refer to Southern Family.

Neither the IRS nor the Court should be required to read the name "Southern Family" into the claim form, particularly when the form specifically identifies Poe Financial as the taxpayer. Given this clear designation of Poe Financial as the taxpayer, whether or not the IRS "broke agency" with Southern Family under Treasury Regulation 1.1502-77A(a) is no longer relevant. If the IRS had broken agency with Southern Family, Southern Family would have been entitled to file its own claim for refund with the IRS for 1996-1998. Regardless of whether the IRS did "break agency," Southern Family elected not to file a separate return.

Furthermore, although Internal Revenue Code § 6402(a) provides that the person who made an overpayment of taxes is entitled to a refund, Southern Family fails to recognize the statute also requires such a claim to be made with the Secretary within the applicable period of limitations. See 26 U.S.C. § 6402(a). Southern Family has admitted that the only refund claim filed with the IRS was the claim that expressly identified Poe Financial as the taxpayer. Had Southern Family wished to file a separate claim with the IRS, it could have attempted to do so at that time.

The filing of a timely refund claim with the IRS is a jurisdictional prerequisite to filing a refund action in district court. See U.S. v. Dalm, 494 U.S. at 602. Because Southern Family did not file a refund claim with the IRS for the years 1996-1998, the Court lacks jurisdiction to consider its refund claims for those years. Accordingly, the Court concludes both motions to dismiss should be granted.

It is therefore ORDERED AND ADJUDGED that:

1. Defendant United States of America's Motion to Dismiss is **GRANTED**.

2. Poe Financial Group, Inc.'s Motion to Dismiss Southern Family's Amended Complaint and Incorporated Memorandum of Law (Dkt. 67) is **GRANTED**.

3. All counts of Southern Family's Amended Complaint are **DISMISSED** to the extent Southern Family seeks a refund from the United States (or the right to pursue a refund from the United States) for the tax years 1996-1998. Count IX of Southern Family's Amended Complaint is dismissed in its entirety.

4. This Order neither addresses nor limits Poe Financial's right to proceed in this action to seek a federal income tax refund for the tax years 1996-1998, or Southern Family's right to proceed in this action to seek a federal income tax refund for the tax year 1999. Furthermore, this Order does not address the respective rights of Poe Financial and/or Southern Family to any monies refunded to Poe Financial as the agent for Southern Family as a result of this action.

5. Southern Family's Motion for Continuance of United States of America's Motion for Summary Judgment and Memorandum of Law (Dkt. 80) is **DENIED as moot**.

6. Southern Family's Motion for Leave to Conduct Discovery During the Pendency of a Motion to Dismiss for Lack of Jurisdiction (Dkt. 97) is **DENIED as moot**.

7. Southern Family's Motion for Leave to File a Reply (Dkt. 100) is **DENIED as moot**.

**DONE** and **ORDERED** in Tampa, Florida on December 11, 2008.

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

**Copies furnished to:**
Counsel/Parties of Record

S:\Even\2005\05-cv-2158.mtd.wpd